UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DELBERT EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:16-CV-00895 PLC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Delbert Edwards ("Plaintiff") seeks review of the decision of Defendant Nancy Berryhill, Deputy Commissioner of Operations, Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. [1] (ECF No. 28.) For the reasons set forth below, the Court affirms the denial of Plaintiff's applications.

I.    **Background and Procedural History**

Plaintiff, then fifty years of age, filed applications for Disability Insurance Benefits and Supplemental Security Income alleging he was disabled as of December 31, 2006[2] as a result of: sleep apnea; diabetes; neuropathy in hands, feet and knees; poor vision; high blood pressure; high cholesterol; and torn rotator cuffs. (Tr. 133, 167) The SSA denied Plaintiff's claims, and Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr.

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636 (c). (ECF No.12).
[2] At the administrative hearing, Plaintiff amended the alleged onset date to August 25, 2011. (Tr. 110)

1

99) The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing in September 2013, at which Plaintiff testified.

At the hearing, Plaintiff testified that he last worked full time as a truck driver in 2001, however, upon further prompting, he affirmed that he worked part time as a general laborer in 2010 but lost that job because he "wasn't able to keep up" due to the pain in his feet. (Tr. 1135-36) Plaintiff testified that he felt numbness in his fingers, feet, and toes "continuous[ly]" and he could not stand for "very long because then fire starts shooting out." (Tr. 1140) Plaintiff stated that he used a riding lawn mower to cut his grass. (Tr. 1143) Plaintiff was the president of a drug court alumni group, and he recently helped with a car wash event, though his participation in the event was limited to "set[ting] it up" and ""maybe driv[ing] up and get[ting] towels." (Tr. 1145)

The ALJ entered a decision, finding that Plaintiff "has not been under a disability, as defined in the Social Security Act…." (Tr. 42) Plaintiff requested review and submitted additional medical evidence to the SSA Appeals Council ("Appeals Council"), which remanded the case to the ALJ with instructions to, among other things: (1) obtain additional information concerning Plaintiff's neuropathy; (2) evaluate Plaintiff's right shoulder impairment and neuropathy; (3) reconsider medical opinion evidence and Plaintiff's residual functional capacity (RFC); and (4) obtain testimony from a vocational expert. (Tr. 17-18)

The ALJ held another hearing in October 2014. Plaintiff testified that he last worked in December 2010 as a laborer for Classic Buildings. (Tr. 1116) Plaintiff stated that he was only in that position for "about four months" because he "just couldn't walk around and the neuropathy of my feet was really bad and it was hard for me to stay on my feet that long." (Tr. 1116)

2

Plaintiff claimed his vision was "nothing but fog" but he could not afford cataract surgery. (Tr. 1121) Plaintiff stated he "can't even see to cut the grass." (Tr. 1122)

In regard to his COPD, Plaintiff testified that standing and "just getting out of my chair sometimes" caused him shortness of breath. (Tr. 1123) Plaintiff stated he could lift twenty to thirty pounds to "carry some groceries in…from the car," but that he had to take a break after "each trip." (Tr. 1124) Plaintiff spent most of the day "sitting in a recliner," "leaned back," with his "feet raised." (Tr. 1126) According to Plaintiff, mowing the lawn had become "just impossible to do" and, because of his impairments, his wife "does everything." (Tr. 1126-27) When the ALJ asked Plaintiff about his most recent alcohol consumption, Plaintiff stated that, in the past year, he had consumed alcohol, specifically, Jell-O shots, one time. (Tr. 1129)

Following the hearing, the ALJ sent interrogatories to a vocational expert. In her response, the vocational expert classified the job of tractor-trailer truck driver at the medium exertional level and the job of loader and unloader at the heavy exertional level. (Tr. 150) The interrogatory asked the vocational expert to consider an individual with the RFC:

> [T]o perform light work … except that he can lift and carry twenty pounds occasionally and ten pounds frequently. He can sit, stand, and walk six hours out of an eight-hour workday, but he requires a sit/stand option every hour. He can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. He is unable to use his right arm for reaching overhead. He can rarely use his hands for fine manipulation and feeling of objects. He must avoid work at unprotected heights and around dangerous moving machinery. He must avoid concentrated exposure to extreme temperatures.

(Tr. 151) The vocational expert opined that such individual could not perform any of Plaintiff's past jobs, because they were "above the light exertional level," but the individual could perform the jobs of taproom attendant, school bus monitor, or children's attendant. (Tr. 151-52)

In a decision dated December 2015, the ALJ again determined that Plaintiff was not disabled for purposes of the SSA. (Tr. 13-24) Plaintiff filed a request for review of the ALJ's

3

decision, which the Appeals Council denied. Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, and 422.210(a)).

## II. Standards for Determining Disability Under the Act

To obtain disability benefits under the Act, a claimant must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. A claimant must show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. See 20 C.F.R. § 404.1520.

## III. ALJ's Decision

In his decision, the ALJ applied the five-step evaluation and determined that Plaintiff: (1) had not engaged in substantial gainful activity since August 25, 2011, the alleged onset date;

4

and (2) had the severe impairments of: diabetes with diabetic neuropathy; chronic obstructive pulmonary disease ("COPD"); possible chronic bronchitis; obesity; and right shoulder "glenohumeral osteoarthritis, a full thickness tear of the anterior supraspinatus insertion, mild-to-moderate lateral arch stenosis secondary to a downsloping acromion, and moderate-to-severe hypertrophic acromioclavicular joint arthropathy." (Tr. 16) The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17) After thoroughly reviewing Plaintiff's testimony and medical records, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements and testimony concerning the intensity, persistence and limiting effects of these symptoms are of only a limited credibility." (Tr. 22)

Next, the ALJ considered the extent to which underlying physical impairments, that could reasonably be expected to produce Plaintiff's pain or other symptoms, limited his functioning. In regard to Plaintiff's rotator cuff tear and glenohumeral osteoarthritis, the ALJ noted that, while Plaintiff had received injections, he did not require physical therapy or surgery and presented no evidence of significant loss of strength or range of motion. (Tr. 18)

The ALJ noted that, although Plaintiff's records revealed a diagnosis of diabetic polyneuropathy, they "do not indicate that at any point he received an electromyogram or nerve conduction study." (Tr. 19) While Plaintiff's neuropathy symptoms worsened in February 2014, there was "no evidence of local complication, infection, or organ failure relating to his diabetes" and his "diagnosis was stable as of then." (Tr. 20) The ALJ also observed that Plaintiff's

healthcare providers frequently noted that Plaintiff was noncompliant with his medication and diet plan, and that he continued to smoke and drink alcohol.

The ALJ considered the medical opinion of Dr. Denise Trowbridge, a non-examining, non-treating physician, who opined that Plaintiff "could occasionally climb stairs and ramps, as well as balance, stoop, kneel, crouch, and crawl." (Tr.19) Dr. Trowbridge provided no limitations on Plaintiff's ability to lift/carry, sit, stand, or walk. (Tr. 21) The ALJ gave Dr. Trowbridge's opinion "some weight…to the degree that these limitations are consistent with the claimant's records." (Tr. 21)

The ALJ also considered the consultative evaluation of Dr. Raymond Leung. (Tr. 20) Dr. Leung observed that Plaintiff "did not seem to have neuropathy in his hands and feet, but had severe decreased vibratory sensation in the right foot with no vibration sensation in the left foot and had proprioception that seemed intact in the right toes but not the left toes." Id. Dr. Leung also observed that Plaintiff had: a slow, waddling gait; the ability to tandem walk; full range of motion in all joints; slight limitations to his leg and grip strength (4.5 out of 5); "no lower extremity peripheral edema, varicosities, or lesions"; and his pulse was "good bilaterally." (Tr. 20-21) The ALJ found that Dr. Leung's observations "contradict the claimant's allegations that his impairments significantly limited his functioning." (Tr. 21)

The ALJ determined that, while Plaintiff's "records indicate some impairment and limitations,….[n]othing from the medical records and no examining or treating physician has stated that the claimant's combination of these impairments is severe enough to preclude him from performing all work. . . ." (Tr. 22) The ALJ further found that Plaintiff's failure to comply with his prescribed medications and his doctors' lifestyle recommendations "undermine[d] the claimant's overall credibility." Id. Finally, the ALJ noted that evidence that Plaintiff worked in

6

2010 and 2011, cut his own grass, drove, and actively participated in a drug court alumni group[3] "undermine the claimant's allegations that the impairments he has are as significantly limiting as alleged." Id.

The ALJ found that Plaintiff had the RFC to perform light work except as follows:

[H]e can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and walk six hours out of an eight-hour workday, but he requires a sit/stand option every hour. He can occasionally climb ramps and stairs, but never use ladders, ropes, or scaffolds. He is unable to use his right arm for reaching overhead. He can rarely use his hands for fine manipulation and feeling of objects. He must avoid work at unprotected heights and exposure to dangerous moving machinery. He must avoid concentrated exposure to extreme temperatures.

(Tr. 17) The ALJ noted that he "considered the claimant's obesity and its effect on his other impairments when formulating a residual capacity in this case." (Tr. 22)

At steps four and five of the sequential evaluation, the ALJ concluded that Plaintiff was unable to perform any past relevant work but had the RFC to perform other jobs that exist in significant numbers in the national economy. (Tr. 22-23) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 24)

IV. **Standard for Judicial Review**

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); see also Jones v. Astrue, 619 F.3d 963, 968 (8th Cir. 2010). "Substantial evidence is 'less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion.'" Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Brown v. Colvin, 825 F.3d 936, 939 (8th Cir. 2016)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, as long as

---

[3] In his decision, the ALJ misidentified this group as Alcoholic Anonymous. (Tr. 22)

substantial evidence exists in the record to support the Commissioner's decision, a court may not reverse merely because there is also substantial evidence detracting from the decision, or because it would have ruled otherwise. Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014); see also Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015). A court "do[es] not reweigh the evidence presented to the ALJ and defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

**V.     Discussion**

Plaintiff claims that substantial evidence does not support the ALJ's RFC determination. More specifically, Plaintiff contends that the ALJ erred in failing to properly: (1) develop the record, particularly in regard to Plaintiff's neuropathy; (2) assess Plaintiff's credibility; and (3) consider the effects of Plaintiff's obesity on his RFC.[4] In response, Defendant asserts that the ALJ properly developed the record and considered Plaintiff's credibility and obesity.

---

[4] Plaintiff also alleges in a conclusory manner that the ALJ did not comply with the Appeals Council's order to "further evaluate the claimant's subjective complaints and provide rationale in

8

## A. Development of the record

Plaintiff contends that the ALJ did not comply with the Appeals Council's remand order and failed to develop the record, particularly in regard to Plaintiff's neuropathy. (ECF No. 28) Defendant counters that the record contained sufficient medical evidence to determine Plaintiff's RFC. (ECF No. 33)

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Combs v. Berryhill, 868 F.3d 704, 708 (8th Cir. 2017) (quoting Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010)). When a critical issue is undeveloped, fully developing the record requires that the ALJ re-contact a treating or consulting physician. Vossen, 612 F.3d at 1016 (emphasis in original) (quoting Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)). The ALJ is only required to order medical examinations and tests, however, "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010) (quoting Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994)).

Plaintiff claims that the ALJ failed to "obtain additional evidence concerning the claimant's neuropathy." (ECF No. 28 at 10) However, Plaintiff testified extensively about his neuropathy at the second administrative hearing. (See Tr. 1117, 1119, 1124, 1127) Plaintiff's testimony concerning the severity of his impairments is evidence under SSA regulations. See 20

---

accordance with the disability regulations pertaining to evaluation of symptoms[.]" (ECF No. 28 at 12) Because Plaintiff provides no support for this assertion, the Court does not address it.

C.F.R. § 416.913(4). As such, the ALJ obtained additional evidence about Plaintiff's neuropathy in accordance with the Appeals Council's order.[5]

Moreover, "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Halverson v. Astrue, 600 F.3d 922, 933 (8th Cir. 2010) (quoting Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994)). Here, the record contained ample medical evidence pertaining to Plaintiff's neuropathy and foot pain. The ALJ noted that, in January 2012, Plaintiff underwent a monofilament wire test of his lower extremities, which "indicated a sensory deficit in the claimant's bilateral soles of his feet." In April 2012, Dr. Leung performed a consultative examination and noted "decreased sensation to pinprick," "no sensation to light touch," "severe decreased vibratory sensation in the right foot," "no vibratory sensation in the left foot," and intact proprioception "in the right toes but not the left toes." The following month, Dr. Trowbridge noted limitations to Plaintiff's ability to feel.

Although not explicitly discussed by the ALJ, the record also contained the results of an Ankle-Brachial Index test performed in June 2012. The test revealed that Plaintiff had a right ABI of 0.93, left ABI of 0.89, and "[m]inimally depressed left slightly greater than right ABI."[6] (Tr. 749) The ALJ noted that, in March 2014, Plaintiff "had calluses on his feet and had slightly

---

[5] Plaintiff suggests that the ALJ's limited questioning of Plaintiff at the hearings constituted a failure to develop the record. However, Plaintiff presents no authority to support his position that an ALJ's failure to question a claimant violates the ALJ's duty to fully develop the record.

[6] Plaintiff asserts that the ALJ unfairly characterized the medical record by omitting certain treatment notes and failing to discuss Plaintiff's Ankle-Brachial Index testing. (ECF No. 28 at 11) However, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). Furthermore, although the ALJ did not discuss the Ankle-Brachial Index testing or treatment notes from two doctor appointments on March 16, 2012, the ALJ discussed numerous other findings in the record relating to Plaintiff's neuropathy and abnormal distal pulse.

diminished distal pulses and reduced sensation" and, in July 2014, Plaintiff had "slightly diminished bilateral distal pulses and reduced sensation in his feet." Contrary to Plaintiff's claims on appeal, the ALJ did not mischaracterize the record, but rather thoroughly discussed its contents.

Based on his review of the medical records, the ALJ found that Plaintiff had the severe impairment of "diabetes with diabetic neuropathy." The ALJ accommodated Plaintiff's severe impairment by limiting him to light work and requiring a "sit/stand option every hour." The ALJ further limited Plaintiff to "sit, stand, and walk six hours out of an eight-hour work day" and occasionally climb ramps and stairs, but never use ladders, ropes, or scaffolds. Upon review, the Court finds that the record contains sufficient medical evidence based upon which the ALJ properly determined Plaintiff's functional limitations.

### B. Credibility

Plaintiff claims that the ALJ failed to properly analyze his credibility because the ALJ: (1) did not address the factors required by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984); (2) failed to consider the financial obstacles to Plaintiff's medical compliance; and (3) relied on outdated evidence of his activities of daily living. (ECF No. 28) Defendant counters that the ALJ provided specific reasons for his credibility finding and properly considered Plaintiff's inability to afford treatment and activities of daily living.

Before determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (citing Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001)). When making a credibility determination, an ALJ should consider: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage,

effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. SSR 96–7p. See also Polaski v. Heckler, 739 F.2d at 1322. However, an ALJ need not explicitly discuss each factor set forth in Polaski. Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (citing Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991)).

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements and testimony concerning the intensity, persistence and limiting effects of these symptoms are of only a limited credibility." (Tr. 22) In reaching this determination, the ALJ discussed the medical opinion evidence, which suggested that Plaintiff was less limited than he claimed. (Id.) The ALJ also cited numerous instances in which Plaintiff's treating physicians noted that Plaintiff had missed insulin doses, failed to check his blood sugars, run out of or otherwise failed to take his prescribed medications (including Crestor, amlodipine, Novolog, and Lantus), and failed to improve his diet. Based on Plaintiff's medical records, the ALJ found that Plaintiff "has not been compliant with any diet plan," "continues to consume alcohol," and "has, at times, not complied with his medications." (Id.) The ALJ found that this lack of compliance "is inconsistent with a motivation to improve the claimant's symptoms, and these facts undermine the claimant's overall credibility." (Id.)

Plaintiff argues that the ALJ improperly considered Plaintiff's medical noncompliance as evidence undermining his credibility because he was unable to unable to afford treatment. (ECF No. 28 at 11-12) "[T]he ALJ must consider a claimant's allegation that he has not sought

medical treatment or used medications because of a lack of finances." Dover v. Bowen, 784 F.2d 335, 337 (8th Cir. 1986) (citing Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir. 1984)). However, "the fact that the claimant is under financial strain is not determinative." Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014) (quoting Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992)). "Inconsistent reports to doctors and lack of motivation for or resistance to treatment provide substantial evidence supporting an ALJ discounting Plaintiff's credibility." Julin v. Colvin, 826 F.3d 1082, 1087 (8th Cir. 2016). Ultimately, "[i]t is for the ALJ in the first instance to determine a Plaintiff's real motivation for failing to follow prescribed treatment or seek medical attention." Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

The ALJ noted Plaintiff's financial difficulties in his decision, recounting Plaintiff's testimony that "he had difficulty with treatment because he lacks insurance or money to pay for treatment and he is only covered for life-threatening treatment." (Tr. 18) However, financial hardship was not the sole cause of Plaintiff's medical noncompliance. In October 2012, Plaintiff attributed his regular missed doses of Lantus and Novolog to "a combination of forgetting to take his doses, not having insulin available when he is away from home and not wanting to take his shots due to pain in his arms." (Tr. 375) Plaintiff also failed to use his CPAP machine, monitor his blood sugars, and quit smoking and drinking.

Moreover, the record does not support Plaintiff's contention that his noncompliance was due to financial inability to obtain treatment. The record reveals that Plaintiff received regular medical care at University of Missouri Health System. The record contains no evidence that any doctors, clinics, or hospitals refused to treat Plaintiff due to his inability to pay for services. To the contrary, the record reveals that Plaintiff informed his doctor in March 2014 that he could not take insulin because "he lacked insurance," but Plaintiff was taking insulin three months later.

Nor does the record suggest that Plaintiff's financial condition precluded him from making the dietary and lifestyle changes recommended by his doctors. Accordingly, Plaintiff's financial hardship did not excuse his failure to comply with his physicians' directions. See, e.g., Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006).

Plaintiff also claims that, in assessing Plaintiff's credibility, the ALJ improperly relied on evidence of Plaintiff's work-related activities from before the amended onset date of August 2011. (ECF No. 28 at 12) However, an ALJ may consider all evidence in the record, regardless of date. See Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005); Tate v. Apfel, 167 F.3d 1191, 1194 (8th Cir. 1999).

Furthermore, Plaintiff did not rely solely upon the evidence that Plaintiff worked cutting wood in 2010 and as a carpenter in 2011. The ALJ also noted that he was able to drive and was active in a drug court alumni group that he founded. (Tr. 22) Other evidence in the record suggested that Plaintiff was less limited than he alleged. For example, in his adult function report, dated February 2012, Plaintiff stated that he helped his wife prepare meals and perform light house work, "sometimes" cleaned the car, "help[ed…clean up after we eat," and "t[ook] care of the rabbits." (Tr. 234) Plaintiff also attended a "variety of church functions" two to three times per week for "about an hour at a time," and he participated in a car wash for his drug court alumni group. (Tr. 238, 1143-45) The ALJ did not err in finding that Plaintiff's activities of daily living undermined his allegation of total disability. See Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007) (substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving, preparing meals, performing housework, shopping for groceries, handling money, and visiting family).

Upon review, the Court finds that, in assessing Plaintiff's credibility, the ALJ discussed many of the factors set forth in Polaski. Additionally, the record supports the ALJ's findings that: (1) Plaintiff did not comply with his prescription medications and recommendations from numerous doctors to improve his diet, stop smoking, and increase physical activity; and (2) Plaintiff's activities of daily living were inconsistent with his claims of disability. Therefore, the ALJ provided sufficiently specific "good reasons" to discredit Plaintiff's testimony.

*C. Obesity*

Plaintiff claims that the ALJ insufficiently considered Plaintiff's obesity because he provided relatively little analysis of Plaintiff's obesity in his decision. (ECF No. 28 at 14) In response, the SSA contends that "the ALJ expressly took into account the effects of Plaintiff's obesity." (ECF No. 33 at 8 (citing SSR 02-1p))

The SSA recognizes that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." 20 C.F.R. § 404, Subpt. P, App'x 1, § 1.00(Q). See also SSR 02–1p, 2002 WL 34686281, at *3 (Sept. 12, 2002). Thus, at all stages of the sequential evaluation process, including the RFC determination, "adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. § 404, Subpt. P, App'x 1, § 1.00(Q). However, the United States Court of Appeals for the Eighth Circuit has held that "[w]hen an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (quoting Heino v. Astrue, 578 F.3d 873, 881 (8th Cir. 2009)).

Here, the ALJ found that Plaintiff's obesity was a severe impairment and referenced obesity when formulating the RFC. At step three of the sequential evaluation, the ALJ noted that "Body Mass Index charts indicate[d] obesity" for Plaintiff's height and weight. (Tr. 22) The ALJ

15

accounted for Plaintiff's obesity, in combination with his other impairments, by limiting Plaintiff to light work and including a sit/stand option. (Tr. 17) The ALJ explained that he had "considered the claimant's obesity and its effect on his other impairments when formulating a residual functional capacity in this case." (Tr. 22)

Although Plaintiff argues that the ALJ failed to include in the RFC limitations relating to his obesity, he does not identify any functional restrictions caused by obesity, nor does he point to any medical evidence supporting the imposition of greater limitations. The Court finds that the ALJ properly accounted for Plaintiff's obesity when formulating the RFC. "Because the ALJ specifically took [Plaintiff's] obesity into account in his evaluation, we will not reverse that decision." Heino, 578 F.3d at 881-82.

## VI. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Deputy Commissioner of Operations, Social Security Administration, denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN  
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of September, 2018